IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| GARY COUCH, | : | |
|         Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:15-cv-00026-MTT-CHW |
| | : | |
| Officer BRITTON, | : | |
| | : | Proceedings Under 42 U.S.C. § 1983 |
|         Defendants. | : | Before the U.S. Magistrate Judge |

**REPORT & RECOMMENDATION**

Plaintiff Gary Couch filed the present action on February 3, 2015, alleging that his civil rights were violated under 42 U.S.C. § 1983 while serving a sentence upon conviction at Baldwin State Prison. Doc. 1. Plaintiff originally brought multiple claims related to "four beatings," implicating seven prison officials and two inmates. Because Plaintiff's complaint raised unrelated claims and was vague as to whom he intended to sue, Plaintiff was ordered to recast his complaint. Doc. 11. Plaintiff filed a recast complaint on March 17, 2015, (Doc. 25), stating that he wished only to raise claims arising out of an alleged use of force by Officer Britton on August 13, 2014. Plaintiff included other unrelated claims and facts, however, and was again ordered to recast his complaint. Doc. 27. Plaintiff then recast his complaint to name only one Defendant, Officer Britton. Doc. 30. This claim survived the Court's frivolity review and Plaintiff was allowed to proceed. Doc. 32.

Plaintiff alleges that Officer Britton entered his cell on August 13, 2014, and hit him on the head and body with a broom stick, causing significant bleeding and prolonged injury. Defendant Britton asserts that he entered Plaintiff's cell on August 13, 2014, for the purpose of unclogging Plaintiff's toilet and did not use force against Plaintiff. Defendant Britton filed a Motion for

Summary Judgment on January 1, 2016. Doc. 61. Because there remain genuine issues of material fact and Defendant is not entitled to judgment as a matter of law, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment be **DENIED**.

## SUMMARY JUDGEMENT STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See *id.* (citing *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. *Peek–A–Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla.*, 630 F.3d 1346, 1353 (11th Cir.

2011). However, "unsworn statements, even from pro se parties, should not be 'consider[ed] in determining the propriety of summary judgment.'" *McCaskill v. Ray,* 279 F. App'x 913, 915 (11th Cir. 2008) (quoting *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir.1980)).

## FACTS

In support of his Complaint, Plaintiff relies on his pleadings, deposition, and sworn affidavits. In support of his Motion for Summary Judgment, Defendant relies on Plaintiff's deposition, a Georgia Department of Corrections offender query of Plaintiff, Plaintiff's movement history at Baldwin State Prison, a GDOC use of force assessment and nursing assessment, Plaintiff's grievance related to the current claim, a printout of Plaintiff's Grievance history and disciplinary history, the statement of Jeremy Evans, an inmate witness, and Plaintiff's notes.[1] Defendant admits that he entered Plaintiff's cell on August 13, 2014, but denies that he used any manner of force against Plaintiff.

On Defendant's Motion for Summary Judgment, the Court must construe the evidence and draw all inferences in the light most favorable to Plaintiff. Because Plaintiff gave a deposition in this case and Defendant has not presented Affidavits of his own, the following facts are largely taken from Plaintiff's testimony. *Anderson v. Liberty Lobb, Inc.* 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.") (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 – 59 (1970)).

The events underlying the current action occurred on August 13, 2014, while Plaintiff was being held in a "lockdown" cell at Baldwin State Prison. At approximately 4:30 p.m., Officer Britton was passing out meals to inmates in lockdown and refused to provide Plaintiff with his

---

[1] This case was referred to the GDOC internal investigation unit on 10/9/2014. Doc. 61-8, p. 2. The results of that investigation are not included in the evidence presented before the Court. Plaintiff asserts that Officer Britton wrote a statement for the administrative investigation, but no statement is in the record.

3

meal. When Officer Britton passed Plaintiff's cell, Britton stated "'[H]a ha,' you know, 'we ain't – I ain't even bothering feeding your,' – you know, word – 'butt today.'" Pl. Dep., p. 34. Plaintiff then asked if officer Britton was "playing," and Britton responded "no, you're dead." *Id*. Plaintiff, having been transferred earlier in the day, also missed his lunchtime meal and had not eaten since breakfast.[2] In an attempt to get the attention of a supervisor and secure his meal, Plaintiff flooded his cell by clogging his toilet. Pl. Dep., p. 35. According to Plaintiff, policy at the prison requires a supervisor to be notified when an inmate has flooded his cell. Pl. Dep., p. 36.

Officer Britton noticed water coming from Plaintiff's cell and told Plaintiff that "he don't give a rat's butt what [Plaintiff] do, he ain't calling nobody up here." Pl. Dep., p 36. Defendant Britton later entered Plaintiff's cell with a "normal size broomstick." Pl. Dep., p. 39. Britton struck Plaintiff four to five times on his head and four to five times on his chest and body. The assault lasted for ten minutes and caused Plaintiff to bleed from his head. Pl Dep., p. 40; Aff. Jeremy Evans, Doc. 61-11. After Britton stopped hitting Plaintiff, he threw his property into the toilet water and walked off. An inmate in the cell adjacent to Plaintiff's observed Officer Britton emerge from the cell with a blood covered broom handle and slam the door shut. Aff. Jeremy Evans, Doc. 61-11. A second officer initially approached Plaintiff's cell, but turned away at the time Officer Britton began hitting Plaintiff. Pl. Dep., p. 38.

At some point a shift change occurred and the second shift officers noticed the water and blood and called their supervisor. At approximately 7:00 p.m. Plaintiff was taken to medical, (Pl. Dep., pp 15 -16; Aff. Jeremy Evans, Doc. 61-11), and reported that officers had "jumped" on him. Doc. 61-7, p. 2. Plaintiff was treated for "several contusions" on his head, "some noted abrasions"

---

[2] The "Movement History" submitted by Defendant shows that Plaintiff was moved from cell "K-2-9-B" to cell "K-1-22-B" on August 14, 2014. Doc. 61-6, p. 2. The medical records state that injures were treated on August 13, 2014, and Plaintiff returned to cell "K-1." Doc. 61-7, p. 2.

4

on his trunk, "self-inflicted cuts/abrasions" on his extremities, and a "circular indentation" on his shoulder. Doc. 61-7, pp. 2 – 3. In addition to the self-inflicted abrasions, the medical staff described Plaintiff's injuries as trauma resulting from a "use of force." Doc. 61-7, p. 4. Plaintiff's wounds were cleaned with soap and water and he was prescribed ibuprofen and returned to his cell. Plaintiff was later put on extra strength Advil and two to three months later, Plaintiff requested to be seen by medical due to dizziness and soreness. Pl. Dep., p. 56.

Plaintiff now claims that he experienced continuing "headaches, dizziness," "a worse mental state,", nightmares, sleepiness, "major throbbing headache," and a worsening of pain through his back and hands. Pl. Dep., p. 56; Doc. 20, p. 9. Plaintiff also alleges that the incident aggravated his back injury, which will eventually require surgery. A month after the incident, Plaintiff was x-rayed "for a head injury." Pl Dep., p. 53.

## DISCUSSION

### A. Excessive Force Claim

Excessive force claims brought pursuant to 28 U.S.C. 1983 are not governed by a single standard, instead the analysis begins by "identify[ing] the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Conner*, 490 U.S. 386, 394 (1989) (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). Usually, the analyses will focus on Fourth Amendment proscriptions against unreasonable seizures or the Eighth Amendment's proscription against cruel and unusual punishment. *Id.* Claims of excessive force in the context of those incarcerated following conviction are analyzed under Eighth Amendment standards. *Whitley v. Albers*, 475 U.S. 312, 318-25 (1986).

Eighth Amendment excessive force claims have both an objective and subjective component, and Plaintiff has the burden of establishing both. *Hudson v. McMillian*, 503 U.S. 1, 8

5

(1992). To satisfy the subjective prong, Plaintiff must demonstrate that the Defendant acted with a malicious and sadistic purpose to inflict harm. *Id*. To satisfy the objective prong, the plaintiff must show that "the alleged wrongdoing [was] 'objectively harmful' enough to establish a constitutional violation." *Id*. (citing *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)). However, the key inquiry for excessive force claims arising out of the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 36 (2010) (quoting *Hudson*, 503 U.S. at 7). When the use of force is malicious or sadistic, "contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Id*. (quoting *Hudson*, 503 U.S. at 9).

The Eleventh Circuit recognizes a variety of factors when determining the legitimacy of the use of force in a custodial setting. The factors include "(1) the need for the application of force, (2) the relationship between need and the amount of forced used, (3) the extent of the prisoner's injuries, (4) the threat reasonably perceived by the officials on the basis of facts known to them, and (5) efforts made to tempter the severity of the force. *Tate v. Rockford*, 497 F. App'x 921, 923 (11th Cir. 2012) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007)). These factors determine whether "the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to knowing willingness that it occur." *Skrtich v. Thorton,* 280 F. 3d 1295, 1299 (11th Cir. 2002) (quoting *Whitley*, 475 U.S. at 321).

In the present case, a genuine issue of material fact remains as to whether force was applied maliciously and sadistically to cause harm. It is undisputed that Plaintiff violated prison rules by flooding his cell, and it is undisputed that Plaintiff's actions were antecedent to Defendant Britton's use of force. There is, however, no evidence in the record that Officer Britton entered

6

Plaintiff's cell for the purpose of subduing him.[3] Instead, according to Plaintiff's deposition, Officer Britton entered Plaintiff's cell without attempting to "restore order" or otherwise address the disturbance he may have caused. No commands were issued, no attempts were made to handcuff Plaintiff, Plaintiff was not removed from his cell, the toilet was not unclogged, and the water was not cleaned.

Moreover, Plaintiff testified in his deposition that Britton had threatened Plaintiff multiple times during the day and previously refused to follow Baldwin State Prison procedure with regard to giving Plaintiff his meal. Then, when Officer Britton approached Plaintiff's cell with the broom stick, a second Officer turned away and ignored the incident as Officer Britton entered the cell in violation of the stated policy. Officer Britton stated, "'I'm going to give you a reason to flood,' you know, F and this and that." Pl.'s Dep., p. 44; see also *Reid v. Secretary*, Fl. Dept of Corr., 486 F. App'x 848, 852 (2012) (statement concerning intention to harm is evidence that could lead a jury to conclude that force was applied maliciously or sadistically); *Bozeman, v. Orum*, 422 F.3d 1265, 1271 n.11 (11th Cir. 2005) ("threatening language as part of a totality of circumstances can be relevant" to a Officers' subjective state of mind). Officer Britton then, according to Plaintiff, attacked him for ten minutes. Plaintiff did not attempt to fight back but did put his hands up to shield himself from the blows. Pl. Dep., p. 42 - 45. Plaintiff was left bloodied and injured, and Officer Britton refused to allow Plaintiff medical assistance for the remainder of his shift. See *Fennell v. Gilstrap*, 559 F.3d 1212, 1219 (11th Cir. 2009) (promptness of medical attention is relevant to whether a guard attempted to temper the severity of force), abrogated on other grounds by, *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015). This evidence is sufficient to show that

---

[3] Defendant states in his answer that he "denies that he assaulted Plaintiff." Doc. 51, p. 5. Defendant also states in his Answer that he entered Plaintiff's cell, cuffed plaintiff, and intended to unclog the toilet and remove the water from the cell. Doc. 51, p. 5. Defendant's pleadings do not constitute evidence for summary judgment purposes. See *Tuley v. Heyd*, 482 F.2d 590, 592 – 93 (5th Cir. 1973).

7

Officer Britton had a malicious and sadistic intent.

In response to Plaintiff's assertions, Defendant primarily argues that the level of force used against Plaintiff was not sufficient to implicate constitutional concerns and that Plaintiff only suffered a *de minimis* injury. Defendant argues that the force used and injuries allegedly sustained in this case are similar to, or less severe than, cases in which the Eleventh Circuit has found no constitutional violation even if a malicious intent was involved. Primarily, Defendant relies on *Smith v. Secretary*, *Dept. of Corrections* 524 F. App'x. 511 (1lth Cir. 2013), a case in which summary judgment was granted for the Defendant because the amount of force used was not sufficient to authorize a jury to find the use of excessive force. In *Smith*, the Plaintiff's arm was twisted while he was pressed against a wall, and the Plaintiff suffered only "minimal swelling." *Id*. However, the alleged use of force is of a different caliber in this case—where Plaintiff stated that he was struck on the head with a broom stick, and medical evidence shows that he suffered multiple "contusions."

Furthermore, Defendant's assertion that a *de minimis* injury precludes an excessive force claim is incorrect, as the Supreme Court recently clarified:

> This Court's decision did not, as the Fourth Circuit would have it, merely serve to lower the injury threshold for excessive force claims from "significant" to "non-de minimis"—whatever those ill-defined terms might mean. Instead, the Court aimed to shift the "core judicial inquiry" from the extent of the injury to the nature of the force—specifically, whether it was nontrivial and "was applied ... maliciously and sadistically to cause harm." To conclude, as the District Court did here, that the absence of "some arbitrary quantity of injury" requires automatic dismissal of an excessive force claim improperly bypasses this core inquiry.

*Wilkins v. Gaddy*, 559 U.S. 34, at 39 (2010) (internal citations omitted). The Eleventh Circuit also recognized that "the extent of injury is a relevant factor" and "may be an indication of the amount of force applied, it is not solely determinative." *Stallworth v. Tyson*, 578 F. App'x 948, 953 (citing *Wilkins*, 559 U.S. 1178 – 79). Thus, the focus remains on the nature of the force applied. *Id*.

The nature of the force applied in this case is not equivalent to a "push or shove," as Defendant argues, and is not within the ambit of cases where the nature of the force used and the level of injury manifestly belie the implication of a constitutional violation. See *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008)[4] (allegation of punch to stomach while being handcuffed was sufficient to constitute excessive force); *Clark v. Argutto*, 221 F. App'x 819 (11th Cir. 2007) (allegations of kicks and handcuff tightening sufficient to constitute excessive force where evidence authorized finding that force was used maliciously). Further, to the extent that Defendant argues that the medical record does not support Plaintiff's version of the facts, there is a conflict in evidence which must be resolved in Plaintiff's favor at the summary judgment stage. Plaintiff's medical records state that he had contusions on his head, he was seen "bleeding really bad" by another inmate, and he states that he suffers from continuing migraine headaches and other ailments. While the medical records do indicate that Plaintiff reported his pain as mild, Plaintiff also he reported his pain to be high. See *Wilkins*, 599 U.S. at 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without injury"); *Golston v. Hetzel*, 2015 WL 758474, at *23 (M.D. Ala Feb. 23, 2014) (allegations of unprovoked attack without serious injury are sufficient to survive summary judgment where Plaintiff alleged being punched four times); *Hudson*, 503 U.S. at 9 (malicious and sadistic use of force always violates standards of decency "whether or not significant injury is evidence").

In sum, Defendant denies Plaintiff's allegations, including that any force at all was used against Plaintiff. Doc. 61-2, p. 6. Defendant also argues that the alleged level of injury and force

---

[4] The Plaintiff in *Hadley* was an arrestee rather than a prisoner upon conviction, but the Eleventh Circuit has previously applied *Hadley* in relation to inmates' excessive force claims. *Ledlow v. Givens*, 500 Fed. App'x 910, 914 (11th Cir. 2012).

9

are insufficient to constitute a constitutional violation. Nevertheless, as discussed above, Plaintiff's testimony, the medical evidence, and the statements of Jeremy Evans are enough to create disputed issues of material fact regarding the need for the use of force, the nature of the force used, and whether the Defendant acted "maliciously and sadistically" to cause harm. Defendant is not entitled to summary judgment.

### B. Defense of Qualified Immunity

Defendant argues that, in the alternative, he enjoys qualified immunity because it is not clearly established federal law that "such a small quantum of force can constitute an Eighth Amendment violation." Doc. 61-2, p. 9. "Qualified immunity protects government officials performing discretionary functions from civil trial (and other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146 (11th Cir. 1994) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1991)). The qualified immunity inquiry involves a three-step process. *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002). First, the burden is on the defendant to prove that he was acting within the scope of his discretionary authority. *Id*. If the defendant meets this burden, then the Court must determine whether plaintiff suffered a constitutional violation. *Id*. Finally, if the facts prove the violation of a constitutional right, the inquiry is whether the law with respect to that right was clearly established. *Id*.

The clearly established law must provide a defendant with "fair warning" that his or her conduct deprived the plaintiff of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 739–41 (2002). A plaintiff "can demonstrate that the contours of the right were clearly established in several ways." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012). First, a plaintiff can show

10

that "a materially similar case has already been decided." *Id.* (internal quotations and citations omitted). Second, a plaintiff can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation." *Id.* (internal quotations and citation omitted). "Finally, the conduct involved in the case may 'so obviously violate[ ] th[e] constitution that prior case law is unnecessary.'" *Id.* (internal citations omitted). Clearly established precedent in this Circuit means decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the highest court of the pertinent state. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

The law of this Circuit is clear: the defense of qualified immunity is precluded in cases alleging excessive force in light of the subjective requirements of the claim. See *Danley v. Allen,* 540 F.3d 1298, 1310 (11th Cir. 2008) ("we have held that 'there is no room for qualified immunity' in Eighth and Fourteenth Amendment excessive force cases"), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *Bowden v. Stokley*, 576 F. App'x 951, 954 – 55 (11th Cir. 2014) (quoting *Johnson v. Breeden*, 280 F.3d 1308, 1321–22 (11th Cir. 2002) and holding that the subjective element required to establish an excessive force claim "is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution."). Therefore, Defendant is not entitled to summary judgment on the basis of qualified immunity.

## RELIEF SOUGHT

Pursuant to § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). Although section 1997e(e) does not define what constitutes a physical injury, the Eleventh Circuit has concluded that in order to satisfy the statute "the physical injury must be more

11

than *de minimis,* but need not be significant." *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), vacated in part on other grounds, 216 F.3d 970 (11th Cir. 2000) (en banc); *see also Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312–1313 (11th Cir. 2002) ("In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis.") (citation omitted). Thus, in the Eleventh Circuit, it is clear that a prisoner must establish more than a *de minimis* physical injury to recover compensatory and punitive damages for any *mental or emotional* injury suffered. *See Mitchell*, 294 F.3d at 1312–13 (§ 1997e(e) requires showing of more than *de minimis* physical injury in order for plaintiff to proceed on claim for mental or emotional injury).

In this case, it is undisputed that plaintiff suffered multiple injuries to his head, though the evidence may conflict as to how severe these injuries were. Plaintiff describes them as bleeding injuries that resulted in continued migraine headaches (Pl. Dep., P. 55 – 56) and sporadic bouts of dizziness, and that required an x-ray a month later. Plaintiff also alleges that the injuries exacerbated a pre-existing back injury and mental condition[5]. The nurse that treated Plaintiff vaguely described his injuries as "noted contusions" associated with swelling – but did not check the "bleeding" box on the assessment form. The wounds were cleaned with soap and water, and Plaintiff was directed to report back for further complications. Plaintiff was given both acetaminophen and ibuprofen[6], and the disposition was labeled as "urgent." Neither Defendant nor Plaintiff present evidence concerning Plaintiff's follow up care.[7]

---

[5] Plaintiff was moved for mental health reasons on 8/27/2014, 10/16/2014, 10/29/2014, 11/08/2014, and 2/6/2015. Doc. 61-6, p. 2. Prior to August 13, 2014, Plaintiff was moved for mental health reasons on 9/12/2012, 9/26/2012, and 6/3/2014. *Id.* at 3.
[6] Plaintiff contends that this is the highest level of pain medicine he is allowed within the prison.
[7] Plaintiff was allowed to view, but not examine, his medical records. Pl. Dep., p. 70 – 71. Plaintiff was unable to obtain copies of those records, possibly due to prison policy requiring him to pay for them. *Id.*

Cases that have addressed injuries similar to those asserted by Defendant have concluded that they are insufficient under the PLRA to support a claim for compensatory or punitive damages for mental or emotional injury. See *Quinlan v. Personal Transport Services Co.*, 329 F. App'x 246 (11th Cir. 2009) (claims did not surmount 1997e's bar where injury alleged included temporary chest pain, headache, and difficulty breathing as well as periodic back pain.); *Parker v. Dubose*, 2013 WL 4735173 (N.D. Fla. 2013) (dismissing claim for compensatory and punitive damages where injury alleged was a black eye, bloody lip, scrapes, abrasion and back pain). On the other hand, cases which have addressed injuries similar to those alleged by Plaintiff have been held them to not be *de minimis*. *Gomez v. Chandler*, 163 F.3d 921, (5th Cir. 1999) (holding that "cuts, scrapes, contusions to the face, head, and body" are not a *de minimis* injury). *Nashada'dai v. Sapp.*, 2005 WL 3274660 (N.D. Fla. 2005) (finding injury for purposes of 1997e where Plaintiff declared a "psychological emergency" and had minor contusions on his back with bleeding in his right nasal passage); *Hudson*, 503 U.S. at 10 (bruises, swelling, loosened teeth, and cracked dental plate are not a de minims injury); *Owens v. Hart*, 2016 WL 450297 (M.D. Ga. 2016) (allegations of multiple hematomas, abrasions, and a prolonged knot on Plaintiff's head more than *de minimis*).

In an attempt to find some guidance regarding what separates *de minimis* injuries the courts in this district have often cited a Texas case, *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997), in describing a more than de minimis injury as one for which ordinary people would seek professional medical care as opposed to relying on self-remedies.[8]  See *Owens*, 2018 WL 450297, at *3; *Moffett v. Hagan*, 2016 WL 205402 (S.D. Ga. 2016); *Johnson v. Bainbridge Public Safety*, 2007 WL 2593969, at *5 (M.D. Ga. 2007); *Talley v. Johnson*, 2008 WL 2223259, at *3 (M.D. Ga. 2008). In light of this standard and the "close call" these injuries present, it cannot be said as a

---

[8] This standard has not been adopted by the Eleventh Circuit, but the Court has treated it approvingly. See *Thompson v. Secretary, Fla. Dept. of Corr.*, 551 F. App'x 555, 557, n.3 (11th Cir. 2014).

13

matter of law that Plaintiff's injuries were *de minimis* when the evidence is construed in the light most favorable to Plaintiff. Individuals suffering bleeding wounds to the head sufficient to stain a blunt instrument which caused them and which are associated with migraine headaches may very well seek professional medical care. Blunt force wounds to the head that resulted in significant bleeding, combined with allegations of other symptoms associated with head injury, are sufficient to create a genuine issue of material fact as to more than *de minimis* injury.

Finally, Plaintiff's claims survive Section 1997e to the extent that he seeks nominal damages. In this Circuit, it is well established that Section 1997e does not bar suits by prisoners who have not alleged sufficient injuries if they seek nominal damages. *Hughes v. Lott*, 350 F.3d 1157 (11th Cir. 2003); *Brooks v. Warden*, 800 F.3d 1295, 1302 – 1303 (11th Cir. 2015) ("we hold that nothing in [Section] 1997e(e) prevents a prisoner from recovering nominal damages for a constitutional violation without a showing of physical injury.") In deciding whether a pro se litigant seeks nominal damages, the Court must consider whether the complaint could be liberally construed to request nominal damages. *Williams v. Brown*, 347 F. App'x 429 (11th Cir. 2009) (remanding case to district court for consideration of whether complaint could be liberally construed as requesting nominal damages). In Plaintiff's original complaint, he sought the following relief (1) to be removed from the "camp here,"[9] (2) to be heard by the court, (3) immediate action to protect his rights, (4) compel disclosure of his medical records, (5) to "take some action as well I'm protect all my rights as well there too." In Plaintiff's amended complaint (Doc. 30), he stated that the relief he sought was to be allowed to present his case and be heard by the court. Doc. 30, p. 6. At his deposition, Plaintiff was asked what he wanted "in this case" and he responded "Justice." Pl. Dep. p. 72. When asked again, Plaintiff responded ""I'll just let the courts

---

[9] Plaintiff notified the Court on October 26, 2015, that he had been transferred to Georgia State Prison.

14

decide on that." *Id*. Finally, pressed further, Plaintiff stated he wanted to be "paid for his injuries." Pl. Dep. p. 73. Construing these requests liberally, it cannot be said that Plaintiff seeks only monetary compensation. Plaintiff's clear indication of his desire for "justice" and desire "to be heard" expresses the type of vindication of rights which nominal damages may offer. See *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (*citing Carey v. Piphus*, 435 U.S. 247, 266 (1978) for the proposition that "[A] nominal damages award does render a plaintiff a prevailing party by allowing him to vindicate his 'absolute' right to procedural due process through enforcement of a judgment against the defendant.").

## CONCLUSION

Because Plaintiff demonstrated a genuine issue of material fact and Defendant is not entitled to summary judgment as a matter of law, and because Defendant is not entitled to qualified immunity, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 61) be **DENIED**.

It is also **RECOMMENDED** that Plaintiff's "Motion Requesting to be Moved to Safe Living Conditions" (Doc. 66) and "Motion for access and/or Assistance to Law Library" (Doc. 65) be **DENIED**.

Plaintiff's "Motion Requesting to be Moved to be Safe Living Conditions" (Doc. 66) is a letter to the Warden in which Plaintiff requests transfer to a different dormitory and is advising the Warden of the situation "before [] filing paperwork against them." The Plaintiff sent a copy of this letter to the Court "as advice to the Court that [Plaintiff] did advi[s]e [the warden]" of "what was going on." Because Plaintiff does not seek relief from the Court, it is **RECOMMENDED** that this motion be **DENIED**. To the extent that Plaintiff asks for relief from the court, this claim is unrelated to the current action. Plaintiff has been advised multiple times by this court that

"[P]laintiff may set forth only related claims in one civil rights complaint." Docs. 11; 27.

Plaintiff's "Motion for Access and/or Assistance to Law Library," requests an injunction allowing Plaintiff access to the prison law library three days a week. A Court may grant injunctive relief only if the moving party shows (1) a substantial likelihood of success on the merits, (2) irreparable injury will be suffered absent the injunction, and (3) the threatened injury outweighs the damage the proposed injunction may cause the opposing party, and (4) if issued, the injunction would not be adverse to the public interest. *Keeton v. Ander-Wiley*, 664 F.3d 865, 868 (11th Cir. 2011). Plaintiff fails to present evidence that he is not being granted access or how his legal efforts are being hindered. Further, the voluminous amount of motions, amendments, and miscellaneous updates filed by Plaintiff in this case contradict his allegations that he is being denied access. Plaintiff also cannot show immediate, irreparable harm, as he has filed two responses to Defendant's Motion for Summary judgment and two more motions since then. It is **RECOMMENDED** that this motion be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for

failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, the 8th day of April, 2016.

<u>s/ Charles H. Weigle</u>
Charles H. Weigle
United States Magistrate Judge